UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Glassman v. Monsanto Co.*,<br>Case No. 3:20-cv-00024-VC<br><br>*Iona v. Monsanto Co.*,<br>Case No. 3:20-cv-02404-VC<br><br>*Berenfeld v. Monsanto Co.*,<br>Case No. 3:18-cv-01428-VC<br><br>*Proctor v. Monsanto Co.*,<br>Case No. 3:21-cv-00172-VC<br><br>*Belfleur v. Monsanto Co.*,<br>Case No. 3:20-cv-00621-VC<br><br>*Thompson v. Monsanto Co.*,<br>Case No. 3:20-cv-08851-VC<br><br>*Holmes v. Monsanto Co.,*<br>Case No. 3:20-cv-03363-VC | **PRETRIAL ORDER NO. 322: ORDER GRANTING IN PART AND DENYING IN PART MONSANTO'S MOTION TO EXCLUDE EXPERT HAMBURG AND MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 19051, 19448 |

Monsanto's motion to exclude the testimony of Dr. Solomon Hamburg is granted in six of the seven cases. This ruling assumes the reader's familiarity with the facts, the applicable legal standard, the prior *Daubert* rulings in this MDL, and the arguments made by the parties. *See generally In re Roundup Products Liability Litigation*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018) (Pretrial Order No. 45, Dkt. No. 1596); *In re Roundup Products Liability Litigation*, 358

F. Supp. 3d 956 (N.D. Cal. 2019) (Pretrial Order No. 85, Dkt. No. 2799); *Hardeman v. Monsanto Company*, 997 F.3d 941 (9th Cir. 2021).[1]

Monsanto's motion seeks to exclude both the general and specific causation opinions offered by Hamburg. In their opposition, the plaintiffs state they "no longer seek to offer Dr. Hamburg's general causation opinions in any of the underlying seven (7) cases." Plaintiffs' Opp. (Dkt. No. 19431) at 4, n.1. Despite not having his own general causation opinion, Hamburg reliably "ruled in" exposure to Roundup as a cause of all seven of the plaintiffs' cancer, because he incorporated the general causation reports of Drs. Portier, Ritz, and Weisenburger, which provide a basis to conclude that exposure to glyphosate can cause NHL. *See* Hamburg Report (*Iona*) (Dkt. No. 19051-2) at 1. And his use of the "exposure days" metric to determine whether the plaintiffs had been exposed to enough Roundup for it to potentially cause their NHL is similar to the method the Court found reliable in PTO 290. *See* Dkt. No. 18320. As was discussed there, there may be more sophisticated ways of measuring dose or exposure, but that is not enough, on its own, to preclude Hamburg from testifying.

But with respect to Hamburg's "ruling out" process, it's clear from the totality of his testimony in these seven cases that he's not doing a real differential etiology, and not doing real science. He is offering results-driven testimony, saying whatever he thinks he needs to say to get a particular plaintiff over the hump, regardless of whether it contradicts something he said in a different case (or even in his report in the same case). For example, he blows off some risk factors because the studies are "only" correlative, but he accepts Roundup as a substantial cause while acknowledging that those studies are only correlative as well. His testimony on smoking is all over the map—to the point where he discounts smoking for one plaintiff who smoked for 24 years. He also seems unfamiliar with the evidence regarding the important risk factor of obesity. These are but a few examples. As discussed below, one plaintiff has gotten lucky, because Monsanto has not pointed to anything that would require exclusion of Hamburg's opinion. The

---

[1] The plaintiffs' motion to amend their opposition (Dkt. No. 19448) is granted.

remaining plaintiffs are not so lucky. There are more flaws, errors, and inconsistencies than the ones discussed in this ruling, but the ones mentioned discussed here are enough to warrant exclusion.

    1. In the *Iona* case, Hamburg's "ruling out" process was deficient for at least three reasons. First, his report seems to imply that because Iona smoked only two to three cigarettes a day and quit in 2019, she had no excess risk for developing NHL from her smoking. *See* Hamburg Report (*Iona*) (Dkt. No. 19051-2) at 17–18. This is obviously a serious problem—Hamburg characterizes her as a former smoker *even though she was diagnosed with NHL the same year she quit*. *See id.* at 16. Moreover, at deposition, Hamburg testified he did not rule out smoking as a risk factor and would not say whether Iona's history of smoking increased her risk for NHL more or less than her exposure to Roundup. *See* Hamburg Dep. (*Iona*) (Dkt. No. 19051-4) at 44:22–46:10. Second, Hamburg could not rule out Iona's lupus as a risk factor for her NHL and said that the "relative risk of coming down with non-Hodgkin's lymphoma appears to be higher in patients with lupus than the strength of the epidemiological review in Roundup." *See id.* at 33:12–16. That testimony seems incompatible with an opinion that exposure to Roundup was the most likely cause of Iona's NHL. Third, Hamburg testified that having a first-degree relative with a hematologic malignancy can increase the risk of developing NHL and agreed that Iona's brother's hematologic malignancy was a risk factor for Iona's development of NHL. *See id.* at 69:6–70:11. But he didn't consider that fact when he formed his opinions because he didn't know about it. *See id.* at 70:13–17. Given these deficiencies, there is no reliable way for Hamburg to testify that exposure to Roundup is the mostly likely cause of Iona's NHL, and his opinion is excluded.

    2. There are at least two major issues in *Berenfeld*, both related to inconsistencies between Hamburg's report and his deposition testimony. First, in Hamburg's report, he wrote that there were "no reports of obesity/high BMI," but admitted at deposition that Berenfeld was obese and could not rule that out as a risk factor, even while saying that he was not familiar with any studies on links between obesity and Berenfeld's disease. *See* Hamburg Dep. (*Berenfeld*)

3

(Dkt. No. 19051-6) at 78:17–79:5. Second, Hamburg wrote in his report that Berenfeld's "family history is unremarkable for malignancies of the blood," but admitted at deposition that Berenfeld's records show her mother had a subtype of NHL called mycosis fungoides. *See id.* at 81:7–82:6. As in the *Iona* case, Hamburg testified that having a first-degree relative with a hematologic malignancy can increase the risk of developing NHL. *See id.* at 83:3–8. His explanation that he is "not aware that mycosis fungoides is associated with a familial risk of non-Hodgkin's lymphoma, per se" doesn't make any sense—mycosis fungoides is a type of NHL, and a familial history of NHL is a risk factor. *See id.* at 82:10–24. And his protestation that Berenfeld's mother had "a lot more cancer" than just mycosis fungoides makes even less sense. *Id*. His opinion is excluded.

    3. Proctor had squamous cell carcinoma before being diagnosed with NHL. *See* Hamburg Dep. (*Proctor*) (Dkt. No. 19431-11) 122:2–13. Everyone agrees that having squamous cell carcinoma is a risk factor for developing NHL. In his report, Hamburg noted that Proctor had been diagnosed with squamous cell carcinoma, but did not discuss how it might have contributed to the development of his NHL—an omission that's glaring in its own right. But his deposition testimony on this topic confirms that his opinion must be excluded. At one point, Hamburg said that the studies showing an increase in NHL cases for people with squamous cell carcinoma don't mean anything because they are "correlative" rather than "causative," even though elsewhere he has acknowledged that this is true of the Roundup studies as well. *Id.* at 123:16. Hamburg also seemed to say that the carcinoma was irrelevant because Proctor likely got it from sun exposure. But that just begs the question—regardless of how Proctor got carcinoma, the question is whether the carcinoma caused the NHL. At a different point Proctor seemed to acknowledge this, observing that people with other cancers are more likely to develop NHL because of "immunological changes in the body." *Id.* at 131:4. Taken together, this testimony leaves the listener with no clue how Hamburg could have ruled out carcinoma, and a firm conviction that he didn't give the matter any real consideration. The same appears true with respect to family history. Proctor had a first-degree relative with breast cancer. *See id.* at 122:2–

13. The opposition brief argues that a family history of breast cancer is not a recognized risk factor for NHL so, effectively, it shouldn't have been "ruled in" in the first place. But that's contradicted by Hamburg's testimony. *See id.* at 121:23–122:1 ("Q: Do you agree that family history of a first-degree relative with cancer is a risk factor for non-Hodgkin's lymphoma? A: Yes."). And Hamburg testified that he could not rule it out. But he offered no explanation for why, in light of this, he reached such a firm conviction that Roundup was the cause of Proctor's NHL, rather than family cancer history (or, for that matter, Proctor's own carcinoma). This opinion is excluded as well.

    4. Hamburg is excluded in *Thompson* for the unreliable way he addressed the plaintiff's smoking and the plaintiff's family history of lung cancer. In his report, Hamburg explains that "smoking is another recognized risk factor for the development of non-Hodgkin's lymphoma," and cites a 2017 study. Hamburg Report (*Thompson*) (Dkt. No. 19431-5) at 9. Then, relying on a footnote in that study, he references a 2014 study that found an elevated risk for NHL for people who smoked cigarettes for 40 or more years. *Id.* Since Thompson "only" smoked for 24 years, Hamburg ruled it out. This is not science. Hamburg appears to have simply ignored the larger findings of the study he cited in favor of a single datapoint buried in a footnote that does not even appear helpful. He even contradicts himself in testimony he's given in the other cases, where he has said "most of the data looks at increases above ten-pack-a-year cigarette smoking at minimum." Hamburg Dep. (*Berenfeld*) (Dkt. No. 19051-6) at 78:5–6. If that wasn't enough, like in *Proctor*, Hamburg testified that Thompson's family history of lung cancer would increase his risk of any type of malignancy, but he provided no coherent explanation for how he could rule it out as a cause. *See* Hamburg Dep. (*Thompson*) (Dkt. No. 19431-13) at 48:18–24.

    5. In *Belfleur*, Monsanto takes issue with how Hamburg considered the plaintiff's age, gender, diabetes, hepatitis B, obesity, and family history of cancer. Hamburg testified that these are all risk factors for NHL but, for at least some of the factors, he did not address them in his report, and he testified he could not rule them out. His opinion is excluded.

    6. In *Holmes*, Hamburg's report says Holmes has never had hepatitis and has never been

obese. *See* Hamburg Report (*Holmes*) 19431-18 at 10. But at deposition, Monsanto presented a document that showed Holmes' doctor called him a chronic hepatitis B patient, and Monsanto has presented at least some evidence that hepatitis B is a risk factor for NHL. *See* Hamburg Dep. (*Holmes*) 52:6–10. Similarly, Hamburg admitted at deposition that at least in 2014, Holmes was obese, and Hamburg agreed that being obese is correlated with NHL. *See id.* at 56:10–57:5. Hamburg's opinion in *Holmes* is excluded.

7. Monsanto's attack on Hamburg's opinion in the *Glassman* case is limited to the fact that he didn't calculate Glassman's BMI. Monsanto has not presented evidence that Glassman was obese. That issue alone is not enough to render his opinion unreliable in that case, nor are Monsanto's arguments about naturally occurring genetic mutations, so Hamburg will be permitted to testify. Monsanto's request to exclude Hamburg's opinion that Glassman's subsequent skin cancers were secondary to his NHL treatment is not a question of NHL causation, so will be left for the trial court to decide.

\* \* \*

In the *Glassman* case, Monsanto's motion for summary judgment is denied because it has not offered a basis for excluding Hamburg's specific causation opinion. The Court will withhold ruling on Monsanto's motion for summary judgment in the other cases until the Court has finished deciding the remaining Wave 7 *Daubert* motions. *See* Pretrial Order No. 314 (Dkt. No. 20341) at 3–4.

**IT IS SO ORDERED.**

Dated: March 28, 2025

_____
VINCE CHHABRIA
United States District Judge